UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| IN RE : ) | |
| ) | |
| RONALD EDWIN TRIEPKE  and ) | Case No. 09-21855-drd-7 |
| ) | |
| CYNTHIA LYNN TRIEPKE, ) | |
| ) | |
| Debtors. ) | |

**MEMORANDUM OPINION**

Before this Court is a Motion for Disgorgement Pursuant to §329 filed by the United States Trustee ("UST") against attorney William P. "Pete" Nacy ("Nacy") and Hanrahan, Nacy & Mathers, P.C. (the "Firm").[1]  The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§1334(b), 157(a) and 157(b)(1).  This is a core proceeding which this Court may hear and determine and in which it may issue a final order pursuant to 28 U.S.C. §157(b)(2)(A).  What follows are the Court's Findings of Fact and Conclusions of Law as required by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.  For the reasons that follow, this Court denies the UST's request that Nacy disgorge fees, and instead, imposes sanctions against Nacy.

**I. FACTUAL BACKGROUND**

Although certain parts of the chain of events are disputed, the parties have agreed to the following facts unless noted.  In April or May of 2009, Ronald and Cynthia Triepke (collectively, the "Debtors") met with attorney Samuel Trapp ("Trapp") to discuss the possibility of filing for bankruptcy.  At that time, the Debtors completed a bankruptcy questionnaire and submitted it to

---

[1] Although the motion was brought against Hanrahan, Nacy & Mathers, Nacy testified that the Firm was administratively dissolved and only exists at this point, if at all, to wind up its affairs.

1

Trapp. The Debtors paid $1,001 in attorney's fees to the Firm.

According to the Debtors' testimony, they were notified in July, 2009, that Trapp was leaving the Firm, but that the Firm would continue to represent them in their Chapter 7 proceeding. The Debtors also testified that in August, 2009, they met with a paralegal who directed them to sign their petition, schedules and statement of financial affairs ("SoFA"). Up to this point, they never met Nacy.

On August 31, 2009, Nacy caused the Debtors' bankruptcy petition to be filed -- that is, Nacy's electronic signature was affixed to the petition. The following language appeared below the signature block: "In a case in which §707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect." Nacy's electronic signature also appeared on behalf of the Firm above the §342(b) acknowledgment.[2] Nacy contends that the Firm filed all bankruptcy cases using his name regardless of who counseled the client.

According to Nacy, Trapp asked him to cover the Debtors' §341 meeting "as a favor to him." He claims that was when he became aware of the bankruptcy filing. The Debtors met Nacy immediately before the meeting of creditors. Nacy did not recall reviewing, prior to the meeting, either the Debtor's bankruptcy filings or the Firm's file on the Debtors. At that time, the Trustee discovered several material inaccuracies in the petition, schedules, and SoFA. These included the

---

[2]The §342(b) notice explains the four chapters of the Bankruptcy Code and the consequences of committing bankruptcy crimes. Section 521(a) requires the attorney to certify that the debtor received it. While the UST initially alleged that Nacy's certification was false or misleading, the allegation was made before the UST discovered that Trapp met with the Debtors before Nacy's involvement. There is no evidence that the Debtors did not receive the §342(b) notice. Thus, this is not an issue before the Court.

failure to disclose any assets related to Ron's Lawn Care (a sole proprietorship of Ronald Triepke), certain payments made in the 90 days prior to the petition date, and the Debtors' separation. As a result, the UST examined the Debtors under Rule 2004 in February, 2010. The testimony is contradictory as to how much time Nacy spent to prepare the Debtors for the examination. (The Debtors alleged two minutes; Nacy alleged 30.) Nevertheless, it was at this meeting that the UST discovered equipment that appeared to have value as well as note payments that had been made by the Debtors to Peru Federal Savings Bank ("Peru FSB") within the 90 days before the bankruptcy filing.

Nacy did not file the Debtors' amended schedules and SoFA until May of 2010, nearly three months after the Rule 2004 examination that uncovered the errors. According to the Trustee, there were still omissions in the documents regarding businesses owned by the Debtors. In July, 2010, a hearing was held on the Trustee's objection to certain of the Debtors' claimed exemptions. The Court sustained the objection to the claim on some tools based on the fact that Cynthia Triepke was not involved in the business for which the "tools of the trade" exemption was claimed. At the hearing, the Debtors withdrew their opposition to the objection to the exemption of the lawn service equipment. Thereafter, the Trustee transferred that equipment back to the Debtors in return for payment.

The Trustee negotiated a settlement with Peru FSB with respect to the preferential payments, and obtained the Court's approval. In October, 2010, the Debtors were discharged.

In August of 2011, the UST filed the motion that is before this Court, asserting that Nacy's representation was wholly deficient, that he made materially false certifications to the Court, and that he caused the Debtors and the bankruptcy estate monetary harm. Nacy countered that both

3

disgorgement and sanctions were inappropriate because the Debtors were to blame for failing to make full disclosure, the errors may have been attributable to faulty Firm practices, and the value of his services exceeded the amount paid by the Debtors.

## II. DISGORGEMENT

The bankruptcy court has the broad power and discretion to award or deny attorney's fees, and indeed, a duty to examine them for reasonableness. *In re Clark*, 223 F. 3d 859, 863 (8th Cir. 2000). *See also* Bankruptcy Rule 2017. Bankruptcy Code §329 authorizes the court to order the return of any payment made to an attorney for a debtor for services rendered in connection with a bankruptcy case "[i]f such compensation exceeds the reasonable value of any such services...." 11 U.S.C. §329(b). The legislature's goal in enacting §329 was to prevent overreaching by a debtor's attorney. *In re Zepecki*, 258 B.R. 719, 724 (8th Cir. 2001). The burden is on the attorney to prove that the agreed compensation was reasonable. *In re Mahendra*, 131 F.3d 750, 757 (8th Cir. 1997).

The Trustee cites several cases to support disgorgement. *See In re Dean*, 401 B.R. 917 (Bankr. D. Idaho 2008)(attorney who failed to verify that security interest in debtors' motorhome was perfected prior to filing petition was required to disgorge one-half of his fee), and *In re Dalton*, 95 B.R. 857 (Bankr. M.D. Ga. 1989) (attorney who failed to meet with debtors concerning contents of petition and significance of sworn declarations was ordered to return retainer). The Court would find them persuasive but for the argument raised by Nacy. He contends that he cannot disgorge that which he did not receive. Nacy testified that the Debtors paid the fees to the Firm, not to him. The UST refers this Court to two cases in response: *Booth* v. *Davis*, 2010 WL 4160116 (D. Kan. Aug. 31, 2010), and *In re Bernstein*, 786 P.2d 352 (Cal. 1990). Both are inapposite.

The plaintiffs in *Booth* brought a legal malpractice suit against their attorney related to a

4

settlement agreement that resulted from a drug dilution case. The attorney moved to dismiss the suit because the plaintiffs failed to join his law firm as a party – the firm was the entity that received the attorney's fees from the disputed settlement, and therefore, was indispensable to plaintiffs' disgorgement claim. The court noted that the attorney did not assert that he did not receive any attorney's fees by virtue of the settlement, and denied the motion to dismiss. It did observe that "[d]isgorgement, if any, from the defendant may be limited to the amount received by the defendant." *Booth*, 2010 WL at *5.

The *Bernstein* case was a disciplinary action brought by the State Bar of California against an attorney for professional misconduct, including the repeated failure to perform the services for which he was retained. The Bar requested suspension and restitution of unearned fees. The attorney maintained that the clients engaged the services of the corporation with which he was associated, not his individual services, and pointed to the fact that the clients' check was made payable to the corporation. The court rejected that argument and ruled in favor of the Bar, noting that "[the attorney] cannot rely on the corporate veil to cloak his own professional lapses." *Bernstein*, 786 P.2d at 357.

Neither *Booth* nor *Bernstein* is persuasive. In the first place, they are not bankruptcy cases relying on precedent stemming from §329. Additionally, the focus of the *Bernstein* court (*i.e.*, whether an attorney-client relationship was formed between the parties, not on whether disgorgement was an appropriate remedy) was entirely different than the issue in this case. Finally, there was no evidence in *Booth* that the attorney did not receive any of the fees. Here, there is. The bottom line is that common sense dictates that Nacy cannot disgorge fees he never received. Therefore, the Court concludes that disgorgement is not a proper remedy in this case.

5

### III. SANCTIONS
#### A. In General

As a threshold matter, Nacy seems to suggest that the imposition of sanctions is inappropriate because the UST only requested disgorgement, and her "reliance on un-pled bases under the rubric of 'any other relief' rings hollow." Nacy is mistaken. Although the UST does not specifically request that the Court impose sanctions in her motion's prayer for relief, she does in fact state that §707(b)(4)(D) applies to this case and asserts that Nacy's certification was false or misleading. The issue of whether sanctions is an appropriate remedy has been briefed and litigated by the parties, and accordingly, is appropriately before this Court.

Section 105 gives bankruptcy courts the broad power to implement the provisions of the Bankruptcy Code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel. *Clark*, 223 F.3d at 864. Furthermore, Bankruptcy Rule 9011(c) provides that if, after notice and an opportunity to respond, the bankruptcy court determines that an attorney has violated Bankruptcy Rule 9011(b), it may impose an appropriate sanction. Thus, there is ample authority for this Court to impose sanctions if warranted.

Sanctions are meant to serve the dual purposes of deterrence and compensation – to deter repetition of such conduct and to compensate for the reasonable costs incurred as a result of that conduct. *In re Thompson*, 329 B.R. 359, 362 (Bankr. D. Mass. 2005). The offender must be given notice and the opportunity to be heard. Fed. R. Bankr. P. 9011(c). Among the factors the court considers in determining whether to impose a sanction and what type to impose are whether the attorney's conduct was part of a pattern or an isolated event, and what effect it had on the litigation process in time or expense. *In re CK Liquidation*, 321 B.R. 355, 362 (1st Cir. B.A.P. 2005). Sanctions may be non-monetary as well as monetary. Fed. R. Bankr. P. Rule 9011(c)(2). *See, e.g.,*

*In re Brent*, 458 B.R. 444 (Bankr. Ill. 2011)(court ordered debtor's attorney who filed false applications for compensation to pay a fine and complete a course in legal ethics).

### B. Sanctions Under Rule 9011 and §707(b)

Rule 9011 is the bankruptcy counterpart of Federal Rule 11.[3] It imposes a duty on attorneys to conduct a reasonable investigation into the facts contained in the documents they file:

> (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ...
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

Fed. R. Bankr. P. 9011.[4] At the very least, a reasonable inquiry requires that the attorney check the debtor's responses in the petition and schedules to assure they are internally and externally consistent, and seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor. *Working Paper: Best Practices for Debtors' Attorneys,* 2008 ABA Sec. Pub., 64 Bus. Law. 80 (2008).

---

[3] Rule 11 precedents are appropriately considered in interpreting Rule 9011. *In re Marsch*, 36 F. 3d 825, 829 (9th Cir. 1994).

[4] Historically, there has been some question whether bankruptcy schedules and statements fell within the scope of Rule 9011 sanctions because they seem to be excluded from Rule 9011(a). However, Congress seems to have settled the question by the enactment of BAPCPA in 2005. Specifically, attorneys' representations as to merit required under Bankruptcy Code §§Sections 707(b)(4)(C) and (D) apply to *any* petition, pleading or written motion signed or filed by them. *See In re Kayne*, 453 B.R. 372, 381 (9th Cir. B.A.P. 2011); *In re Withrow*, 405 B.R. 505, 511-12 (1st Cir. B.A.P. 2009).

Section 707(b)(4) imposes an equivalent duty of investigation on a Chapter 7 debtor's attorney, and provides in part:

> The signature of an attorney on a petition, pleading or written motion shall constitute a certification that the attorney has –
> (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> (ii) determined that the petition, pleading, or written motion –
> (I) is well grounded in fact....
>
> The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge *after an inquiry* that the information in the schedules filed with such petition is incorrect.

11 U.S.C. §§707(b)(4)(C), 707(b)(4)(D)(emphasis added). According to one court, the legislative intent of the Code provisions is clear:

> [D]ebtors' counsel are to exercise significant care as to the completeness and accuracy of *all* recitations on their clients['s] schedules, after they have made a factual investigation and legal evaluation that conforms to the standards applicable to any attorney filing a pleading, motion, or other document in a federal court. The content of a debtor's petition and schedules is relied on, and should have the quality to merit that reliance.

*In re Robertson*, 370 B.R. 804, 809 n.8 (Bankr. D. Minn. 2007). Although the certification is not an absolute guaranty of accuracy, it must be based upon the attorney's best knowledge, information and belief, "formed after an inquiry reasonable under the circumstances." *In re Nosek*, 386 B.R. 374, 381 (Bankr. D. Mass. 2008).

Rule 9011, now enhanced by the §707(b) additions to the Code, evinces a policy that a debtor's attorney exercise independent diligence and care in ensuring that there is evidentiary support for the information contained in his client's bankruptcy schedules. *In re Dean*, 401 B.R. at 924. Factors the court may consider in deciding whether the debtor's attorney has fulfilled his

obligation to verify the accuracy of that information include: (1) whether the attorney impressed on the debtor the critical importance of accuracy in preparation of any documents to be presented to the court, (2) whether the attorney sought from the debtor, and then reviewed, whatever documents were within the debtor's possession or control in order to verify the information, and (3) whether the attorney employed such external verification tools as were available and not time- or cost-prohibitive. *Id.*

The Trustee cites two cases to support the imposition of sanctions. The first is compelling. The attorney in *Withrow* filed a skeleton Chapter 13 petition on behalf of the debtor only to convert the case to chapter 7 less than two weeks later. The attorney then filed the schedules, statement of affairs, and required forms. When the attorney filed an interim fee application, the trustee objected on the grounds that there were errors and omissions in the schedules and statement of affairs, including the failure to claim certain exemptions, to list all of the debtor's bank accounts, and to account for discrepancies in the debtor's reports of income. The trustee also alleged that the attorney had failed to amend the schedules as promised at the §341 meeting. The attorney blamed the errors on the debtor's forgetfulness. The bankruptcy court concluded that the attorney should be sanctioned: "Certainly there is no bright line that surrounds §707(b)(4)(C) and (D) and Rule 9011. But wherever that line lies, this Court agrees with the Chapter 7 Trustee and the UST that Attorney Lafayette has crossed it." *Withrow*, 405 B.R. at 510.

On appeal, the court found that the attorney violated his obligation to conduct a reasonable inquiry into the facts set forth in the debtor's documents before filing them, and had he done so, many, if not all, of the inconsistencies could have been prevented. *Id.* at 513. The court rejected the attorney's finger-pointing argument:

9

> Even if his excuses that the Debtor provided him with inaccurate information are true, they do not explain the numerous inconsistent statements in the various documents regarding the Debtor's income, entitlement to overpay and his support obligations to his mother. They are not sufficient to overcome the sloppy and careless actions (or inactions) of Attorney Lafayette in this case.

*Id.* Accordingly, the court affirmed the bankruptcy court's sanctions order.

In the recent case of *Kayne*, the debtor's petition was electronically signed by her attorney. A §707(b)(4)(D) certification appeared below the signature. The debtor disclosed in her statement of financial affairs that she was a party to a pending lawsuit described as an "Action on promissory note." *Kayne*, 453 B.R. at 375. Neither a potential recovery from the action nor payments from the note was listed in the debtor's schedules. When the debtor was questioned by the trustee at the §341 meeting about the lawsuit and the note, she disclosed that monthly payments of $1,225 were being made on the note. The attorney feigned surprise. The debtor also represented that the note's payoff was $7,000. The trustee left it to the attorney's discretion whether to amend the schedules to list and exempt the payments. The attorney never amended the schedules. The trustee filed a no asset report, the debtor was granted a discharge, and the case was closed.

Some time later, the trustee was notified that the true payoff was in excess of $61,000. The court reopened the case and entered an order compelling turnover of the note payments. The trustee then filed a motion for sanctions against the attorney. After considering all of the evidence, including attorney's fees incurred by the trustee as a result of the non-disclosure, the bankruptcy court ordered the attorney to pay $20,000 to the trustee. On appeal, the Bankruptcy Appellate Panel affirmed. It concluded that the bankruptcy court did not abuse its discretion in determining that the attorney violated Rule 9011(b) and §707(b)(4)(D) based on the egregious nature of the attorney's

conduct: preparing schedules and statements that contained "patently false" statements, knowing the information about the note payments was incorrect, failing to conduct a reasonable investigation into whether the schedules were well-grounded in fact, lying to the trustee about the circumstances surrounding the lawsuit, and attempting to collect on the note following the debtor's discharge. The court also agreed with the amount of the sanctions imposed, observing that "the court feels that sanctions of $20,000 are appropriate, both to make the estate whole and to deter future misconduct." *Id*. at 386.   Although *Kayne* is not precisely on point in terms of the attorney's intent and the egregiousness of his actions, it supports the tenet that when an attorney's conduct falls short of an expected level of competency, sanctions are appropriate.

Nacy asserts that there are substantial questions as to who in the Firm caused the Debtors' petition to be filed, and devotes a substantial part of his briefing to that issue as well as the problems precipitated by an electronic filing system. In both cases cited by Nacy to lend support to his position that his Firm's policy or the "system" is partly to blame, there were errors in the electronic filing system and the attorneys involved were not sanctioned.  Nacy, however, overlooks some important factual distinctions.  In *In re Rose*, 422 B.R. 896 (Bankr. S.D. Ohio 2010), the debtors' attorney filed a petition that included the debtors' electronic signatures before he obtained the debtors' actual signatures.  This violated the local Electronic Court Filing Procedures. There was evidence that the debtors had reviewed the petition before the case was filed, and that their failure to execute the petition was purely an oversight.  The debtors executed the petition once they were made aware of the mistake.  The court found that the attorney's actions did not warrant the imposition of sanctions under Rule 9011.

The attorney in *In re Phillips*, 433 F.3d 1068 (8th Cir. 2006), was the subject of a motion for

11

sanctions for filing a bankruptcy petition without meeting with the debtor or obtaining her signature. However, he did so under peculiar circumstances: the debtor had met with another attorney in the law firm and had signed a previous bankruptcy petition, the debtor's home was subject to impending foreclosure, and the debtor was frequently calling the firm to inquire about the status of her case. The court affirmed the bankruptcy court's finding of the attorney's Rule 9011 violation: "Although Briggs apparently had good intentions when he hastily filed the December 5, 2003, bankruptcy petition, those intentions cannot help Briggs escape the reality that he violated Rule 9011. At the very least, Briggs should have had a personal conversation with the debtor before filing a bankruptcy petition on her behalf." *Id*. at 1071. However, the court struck the sanctions because the "court appears to have sanctioned Briggs for the sins of the entire Critique law firm, rather than for his individual conduct." *Id.* The attorney was not yet working full-time at the firm, and took immediate action to rectify the situation.

The present case does not involve a simple oversight as in *Rose.* Furthermore, in contrast to Nacy, the attorney in that case acted quickly to correct the errors that resulted from his actions. That is not the case here. In an attempt to make the *Phillips* court's admonition applicable to him, Nacy points fingers at the Debtors and Firm staff. The Court has carefully parsed the evidence and, as it makes clear below, does not hold Nacy accountable for matters which were clearly the acts or omissions of others, or things transpiring in the representation prior to the time the evidence indicates he was involved.

### C. Nacy's Conduct

The UST asserts that Nacy's failure to properly represent the Debtors caused them actual harm. He cites the fact that the filing of their case was delayed for over three months and that they

12

could have avoided making preferential payments to Peru FSB. There is no evidence that Nacy had any involvement in the case whatsoever until the meeting of creditors. Therefore, he cannot be held responsible for what transpired prior to that time. Accordingly, neither the delay in the filing of the case nor the avoidable payments on debt resulting in no benefits to the Debtors can be ascribed to Nacy. The same cannot be said, however, of the bankruptcy filing and the events transpiring shortly thereafter.

Nacy cannot escape obligations imposed upon him based on the circumstances of the filing. In the first place, in response to the Trustee's objection to the Debtors' claimed exemptions, he admitted that he filed the bankruptcy petition on behalf of the Firm in his role as "the designated attorney-filer." Next, his name appears multiple times on the petition and related documents. His name appears on the Certification that the Rights and Responsibilities Agreement was executed (of which the Court takes judicial notice). His name appears on the Disclosure of Compensation. Someone's actual signature appears on the originals of those documents. In particular, the Court's rules require that the Firm retain the original of the Rights and Responsibilities Agreement executed by both counsel and the Debtors. The Court considers it unlikely that Firm staff would have filed the documents designating Nacy as the attorney if some other attorney's actual signature appeared on those documents. Moreover, the image of his actual signature appears on the Declaration of Electronic Filing (of which the Court takes judicial notice) that is dated August 24, 2009, one week before the date of the bankruptcy filing. Furthermore, Nacy testified that the Firm's standard procedure was for him to review the petitions that were filed with his electronic signature *before* the filing. That gives rise to a presumption that the same was done in this case. Nacy failed to rebut that presumption. He was unable to testify that he reviewed the Debtors' paperwork before his

13

signature was affixed. Instead, Nacy's testimony was that he had no recollection of reviewing the Debtors' paperwork ahead of time. Despite all of this, Nacy claims that he was unaware of the Debtors' bankruptcy case until he was asked by Trapp to appear at the creditors' meeting. Based on the inferences that can be drawn from the record, the Court finds that Nacy's testimony about his ignorance of the filing of the Debtors' petition is simply not credible.

Even if the Court was to conclude that he did not know about, sign and authorize the filing of the petition, Nacy cannot escape the responsibilities that come with participation in the Electronic Court Filing system. According to the Western District of Missouri's Local Rule 9011-4, "[t]he attorney's use of the login and password issued for ECF shall constitute the signature of the attorney and client(s) for all purposes including Fed. R. Bankr. P. 9011." Whether or not the Firm's procedures for assigning cases worked properly is irrelevant – Nacy had an obligation to ensure that the use of his login and password, and thus his signature, was proper, and is responsible for the consequences that flow from their use. To hold otherwise would undermine the integrity of the filing system and invite more disputes such as this one as to who was actually responsible for the filing and any errors in it.

Additionally, the use of his electronic signature constituted a certification under §707(b)(4)(D) that he had no knowledge after an inquiry that the information in the Debtors' schedules was incorrect, when in fact, he had not even met with the Debtors or reviewed their file or the proposed filings. As noted before, the purpose of the certification is to justify reliance on the contents of the debtor's petition and schedules. Here, Nacy's certification meant nothing and as a result, the bankruptcy process was compromised because the Debtors' bankruptcy papers were unreliable.

14

Even if Nacy was not responsible for the filing of the petition and related papers, he must be held accountable for his conduct once he made an appearance on behalf of the Debtors. Nacy admitted that he typically reviewed his client's file prior to the meeting of creditors, but in this case, he could not recall doing so. It is apparent that he did not. The Debtors' business, Ron's Lawn Service, appeared throughout the questionnaire the Debtors completed before filing bankruptcy, and on which the petition and schedules were presumably based. However, no business equipment was disclosed in the initial papers. Had Nacy reviewed the Debtors' file, including the questionnaire, he would have discovered the discrepancies and inquired about them, as was his duty. If he had then brought them to the attention of the Trustee, the errors could have been rectified by amendments, and the Rule 2004 examination with its attendant costs could have been avoided. It is also apparent that Nacy neglected to properly prepare the Debtors for the meeting of creditors; the meeting had to be continued because the Debtors failed to bring necessary documentation. Likewise, there is evidence that Nacy neglected to adequately prepare the Debtors for their Rule 2004 examination.

Finally, Nacy took an inordinately long time to file the amended schedules and SoFA. He made two unsubstantiated claims to justify the nearly three month delay. First, that the Debtors were not responsive to his request for documents until Nacy sent them a letter about the ramifications of being uncooperative. Second, that the UST acquiesced to the delay, that he had the UST's "seal of approval every step of the way." Curiously, Nacy produced no documentary evidence of either.[5] Moreover, the latter point is irrelevant as Nacy did not need the blessing of the UST to amend schedules he had discovered to be inaccurate.

---

[5] The one letter Nacy did produce was simply a request from Nacy to the UST to allow him time to review and analyze the transcript of the Rule 2004 examination before preparing the amendments.

Based on the record before it and taking into account the factors considered by courts when weighing the decision to impose sanctions, this Court finds that the imposition of sanctions against Nacy is appropriate. The Court finds no evidence in the record that Nacy intended to mislead the Court or that his misconduct was part of a pattern of activity. However, at the very least, Nacy violated Rule 9011 and §707(b)(4) by failing to 1) adequately review information provided by the Debtors regarding their business ventures and debt situation, 2) make a reasonable inquiry that would have identified errors and omissions in the Debtors' schedules and SoFA, and 3) exercise significant care to ensure that the recitations in the Debtors' schedules and SoFA were accurate and complete prior to affixing his electronic signature on them. Additionally, Nacy neglected to promptly correct the errors and adequately prepare the Debtors for each proceeding in the case. In short, Nacy's lack of diligence equates to a failure to provide competent representation to the Debtors.

### IV. CONCLUSION

Nacy accuses the UST of recklessly calling him incompetent when he "should have thanked him, repeatedly, for getting the case back on track, and upholding and exceeding the standards of this Court." He also concludes that the enmity toward Nacy "should completely bewilder the Court." This Court is anything but bewildered. Nacy's conduct did not meet the standards of this Court. He was given notice and an opportunity to be heard, yet could not provide a plausible explanation for his failure to reasonably inquire as to the facts, adequately prepare the Debtors, and timely correct the errors. Accordingly, the Court imposes sanctions against Nacy in the amount of $1,000, the amount the Debtors paid for representation in this bankruptcy estate, payable to the estate. Additionally, the Court hereby orders Nacy to 1) review the ABA Working Paper on Best

Practices for Debtors' Attorneys cited in this Opinion, 2) review U.S. Bankr. Ct. Rules W.D.Mo., Rule 9011-4, 3) review the Electronic Case Files Participant Registration Form/Agreement for the United States District and Bankruptcy Courts, Western District of Missouri, and 4) certify to the Court that he has completed that review within 14 days of the date of this Order.

Dated: April 12, 2012                /s/Dennis R. Dow
                                     THE HONORABLE DENNIS R. DOW
                                     UNITED STATES BANKRUPTCY COURT